UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON K. WETZEL,   Civil Action No.:  18-13088
           Honorable Robert H. Cleland
     Plaintiff,  Magistrate Judge Elizabeth A. Stafford

v.

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,[1]

    Defendant.


_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF NO. 20; ECF NO. 21]**

  Plaintiff Shannon K. Wetzel appeals a final decision of defendant

Commissioner of Social Security (Commissioner) denying her applications

for disability insurance benefits (DIB) and supplemental social security

income benefits (SSI) under the Social Security Act.  Both parties have filed

summary judgment motions, referred to this Court for a report and

recommendation under 28 U.S.C. § 636(b)(1)(B).  After review of the

record, the Court **RECOMMENDS** that:

---

[1] Under Federal Rule of Civil Procedure 25(d), Saul is the successor
defendant.

- Wetzel's motion [ECF No. 20] be **DENIED**;

- the Commissioner's motion [ECF No. 21] be **GRANTED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

### A.    Wetzel's Background and Disability Applications

Born November 16, 1973, Wetzel was 42 years old when she applied for DIB and SSI in March 2016.  [ECF No. 1, PageID.2-3; ECF No. ECF No. 16-5, PageID.254, 258].  She has a high school education, and past relevant work experience as a sales clerk in a production linen department and in shipping and receiving.  [ECF No. 16-2, PageID.84, 100].  Wetzel alleged a disability onset date of August 2, 2015, and that she was disabled because of degenerative disc disease and high blood pressure.  [ECF No. 16-3, PageID.135; ECF No. 16-6, PageID.294].

After the Commissioner denied both disability applications initially, Wetzel requested a hearing, which took place in November 2017, and during which she and a vocational expert (VE) testified.  [ECF No. 16-2, PageID.91-128].  In a February 2018 written decision, the ALJ found Wetzel to be not disabled.  [*Id.*, PageID.73-86].  The Appeals Council denied review, making the ALJ's decision the final decision of the

2

Commissioner, and Wetzel timely filed for judicial review.  [*Id.*, PageID.59-61; ECF No. 1].

## B.    The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]  Second, if the claimant has not had a severe impairment or a combination of such impairments[3] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner

---

[2] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

[3] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c); § 920(c).

3

considers its assessment of the claimant's residual functional capacity and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Wetzel was not disabled.  At the first step, she found that Wetzel had not engaged in substantial gainful activity since her alleged onset date and met the insured status requirement.  [ECF No. 16-2, PageID.78].  At the second step, she found that Wetzel had the severe impairments of degenerative disc disease, status post lumbar fusion; sciatica; lumbar radiculopathy; lumbar spondylosis; and chronic obstructive pulmonary disease (COPD).  [*Id.*, PageID.78-79].  Next, the ALJ concluded that none of Wetzel's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  [*Id.*, PageID.79].

4

Between the third and fourth steps, the ALJ found that Wetzel had the

RFC to:

> stand/walk no more than 4 hours in an 8-hour workday;
> sitting is unlimited, but she would need a sit/stand option at
> least every 30 minutes; lift no more than 20 pounds
> occasionally and 10 pounds frequently; could only stoop, climb,
> balance, crouch, squat, crawl, or kneel occasionally; would
> need a clean air environment free from concentrated levels of
> dust, fumes, chemicals, gases, and other airborne irritants;
> avoid operating vehicles; and avoid all hazards such as but not
> limited to open bodies of water, open flames, moving
> machinery, sharp objects, and unprotected heights.

[ECF No. 16-2, PageID.80].  At step four, the ALJ found that Wetzel could

not perform past relevant work.  [*Id.*, PageID.84].  But after considering

Wetzel's age, education, work experience, RFC and the testimony of the

VE, the ALJ found that she could perform other jobs in the national

economy, including as an office helper, information clerk and mail clerk.

[*Id.*, PageID.85].

## II.   ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether

the Commissioner's decision is supported by substantial evidence and was

made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc.

Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more

than a scintilla of evidence but less than a preponderance; it is such

5

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Wetzel contends that the ALJ erred in assessing her RFC and analyzing her mental impairments. The Court finds that the ALJ's decision is supported by substantial evidence.

**B.**

Wetzel first argues the ALJ erred by failing to consider her lumbar post-laminectomy syndrome in assessing her RFC. [ECF No. 20, PageID.695-696]. Wetzel claims that the ALJ failed to consider the fact "that lumbar post-laminectomy syndrome is pain in excess to the objective findings as it is pain subsequent to surgery." [*Id.*, PageID.696]. Wetzel's argument suggests that, when it comes to evaluating the RFC for someone with lumbar post-laminectomy syndrome, objective evidence is irrelevant. She is wrong. *See Young v. Bowen*, 865 F.2d 1270 (6th Cir. 1989) (Table) (finding that objective evidence did not support claim that post-laminectomy syndrome caused disabling pain).

6

In fact, under Social Security Ruling (SSR) 16-3p, when determining whether a claimant is disabled, the ALJ *must* consider not only the claimant's "symptoms, including pain," but also "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." 2016 WL 1119029, at *1. An ALJ's subjective symptom evaluation should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). [4] At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.

Here, the ALJ found that although her impairments could reasonably cause the alleged symptoms, Wetzel's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [ECF No. 16-2, PageID.81-82]. The ALJ reasoned that Wetzel's

---

[4] SSR 16-3p eliminated use of the term "credibility" from official policy and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." *Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight. *See, e.g.*, *Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018).

"reported activities strongly suggest that her symptoms and related limitations are not as severe as she claims." [*Id.*, PageID.83]. In January 2017, Wetzel reported that she was walking on the treadmill for one to two hours each day at the gym, and she reported exercising more in March 2017. [ECF No. 16-2, PageID.83; ECF No. 16-8, PageID.667]. She also stated she was busy caring for her boyfriend's children and prepares her own meals. [ECF No. 16-2, PageID.83; ECF No. 16-8, PageID.637, 662, 665]. And in August 2017, Wetzel was "busy doing house projects, which she [was] independently completing as there was no one else to help." [ECF No. 16-2, PageID.83; ECF No. 16-8, PageID.653]. Wetzel could travel to Ohio following her brother's passing, and to attend an event at the Fox Theater. [ECF No. 16-2, PageID.83; *see also* ECF No. 16-2, PageID.104, 106].

The ALJ also considered Wetzel's inconsistent statements. At the hearing, she disputed doing housework and insisted she hired help, but "her prior statements to her doctor as reflected in the medical record unambiguously specifies that she was doing the work herself, independently, without any help." [ECF No. 16-2, PageID.83; ECF No. 16-8, PageID.653]. And the ALJ found that "the longitudinal examinations performed by various specialists have not yielded findings of functional

deficits that would be consistent with disabling impairments."  [ECF No. 16-2, PageID.83].

The ALJ noted that Wetzel was referred to surgeon Teck Soo, M.D., by her primary care physician because of complaints of worsening back and leg pain.  [ECF No. 16-2, PageID.81].  In October 2015, Dr. Soo ordered MRI and CT imaging and recommended the conservative care of physical therapy, medication and smoking cessation.  [ECF No. 16-2, PageID.81; ECF No. 16-7, PageID.355].  The ALJ noted that the records do not show that, after the October 2015 visit, Wetzel sought more care from Dr. Soo or the recommended physical therapy.  [ECF No. 16-2, PageID.81-82].

And despite Dr. Soo's order to update imaging in October 2015, Wetzel did not undergo an MRI until six months later, in April 2016.  [ECF No. 16-2, PageID.81; ECF No. 16-7, PageID.422-423].  The MRI revealed "disc bulges at L3-L4 and L5-S1 with mild to moderate foraminal stenosis," but "no significant canal stenosis or effect on nerve roots."  [ECF No. 16-2, PageID.81; ECF No. 16-7, PageID.422-423].  It also revealed no significant canal or foraminal stenosis at T9-T10, T10-T11, T11-T12, T12-L1, L1-L2, L2-L3, L3-L4 and L4-L5, and Wetzel's vertebral body heights and alignment were within normal limits.  [ECF No. 16-7, PageID.422-423].

9

In July 2016, Wetzel visited neurologist Assadollah Mazhari, M.D. [ECF No. 16-2, PageID.81; ECF No. 16-7, PageID.439-442]. Dr. Mazhari found that Wetzel had no acute distress despite her complaints of "9/10 pain." [ECF No. 16-2, PageID.81, ECF No. 16-7, PageID.439, 441]. And although Dr. Mazhari ordered updated x-rays and an EMG study, the records do not show that Wetzel complied. [ECF No. 16-2, PageID.81; ECF No. 16-7, PageID.441]. The record before the ALJ also did not corroborate Wetzel's assertion that a neurosurgeon had recommended more surgery. [ECF No. 16-2, PageID.82]. Wetzel's pain management specialist did recommend another neurosurgical opinion, but noted it was "not urgent." [ECF No. 16-2, PageID.82, ECF No. 16-7, PageID.524].

The ALJ also found that the physical examinations by Dr. Soo, Dr. Mazhri and the pain management specialist did not reveal the degree of functional deficits typically associated with disabling back pain. [ECF No. 16-2, PageID.82]. "There was no mention of weakness, diminished sensation, limited mobility, or antalgic gait," and the neurological examinations were "unremarkable." [ECF No. 16-2, PageID.82; *see also* 16-7, PageID.354-355, 441]. Although Wetzel's straight-leg testing was positive and she appeared uncomfortable at a September 2016 examination, her pain management specialist indicated that her lower

10

extremity strength was within normal limits and there was no indication of antalgic gait.  [ECF No. 16-2, PageID.82; ECF No. 16-7, PageID.515].

The ALJ's assessment of Wetzel's post-laminectomy syndrome and RFC determination are supported by substantial evidence, and the Court thus finds no compelling reason to disturb the ALJ's subjective symptom assessment.

**C.**

The ALJ gave great weight to the August 2016 opinion of a state agency consultant, R.H. Digby, M.D., finding it to be consistent with the evidence as a whole.  [ECF No. 16-2, PageID.84].  Wetzel contends that this finding was error because the state agency consultant did not review all the evidence and that ALJ thus improperly relied on her own lay opinion to develop her RFC.  [*See* ECF No. 20, PageID.697-698].  This argument lacks merit.

In *Blakley v. Comm'r Of Soc. Sec.*, the court overturned the decision of an ALJ who adopted the findings of the state agency consultants when those consultants had not reviewed a substantial portion of the record.  581 F.3d 399 (6th Cir. 2009).  But *Blakley* should not be misconstrued as "providing a blanket prohibition on an ALJ's adoption of a non-examining source opinion, where that source has not reviewed the entire record."

*Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 2016 WL 124140, at *7 (6th Cir. Jan. 12, 2016) (citing *Blakley*, 581 F.3d at 409). "There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting SSR 96-6p, 1996 WL 374180, at *2 (1996)).

In *Blakley*, the ALJ failed to give any indication that she had considered the evidence after the state agency physicians' opinions before giving them great weight. *Blakley,* 581 F.3d at 409. "Where the non-examining source did not review a complete case record, we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion from the non-examining source." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (internal quotation marks and citations omitted).

Here, Wetzel misstates what is required, arguing that the ALJ failed to state an understanding that Dr. Digby lacked critical evidence. [ECF No. 20, PageID.697-698]. But the question is whether the ALJ showed that *she* considered the complete record; there is no error as long as the ALJ scrutinized the entire record. *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016). In *Kepke*, the ALJ showed that he provided the

12

required scrutiny by imposing limitations greater than those found by the state agency consultant.  *Id.*  Here, the ALJ found that Wetzel could stand or walk no more than four hours in a workday and required a sit/stand option, while Dr. Digby opined that Wetzel could stand or walk about six hours in a workday and included no sit/stand option.  [ECF No. 16-2, PageID.80; ECF No. 16-3, PageID.143-145].  The ALJ's imposition of greater limitations than Dr. Digby is evidence that she scrutinized the entire argument, as required.  *Kepke,* 636 F. App'x at 632.

Wetzel does not argue that the ALJ failed to scrutinize the entire record.  Instead, she faults the ALJ for relying on her own lay opinion.  But the Sixth Circuit has repeatedly found that it is the ALJ's responsibility to evaluate the medical evidence.  *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726 (6th Cir. 2013) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir.2004)).  The ALJ is charged with considering all evidence and assessing the claimant's RFC.  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC.").

And Wetzel fails to sustain her burden of showing that she required a more restrictive RFC.  *See Jordan v. Comm'r of Soc.Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  She alleges that Dr. Digby "lacked critical

examinations showing positive SLR bilaterally, positive FABER's test, prescription of Robaxin, Gabapentin, medial branch blocks, sacroiliac injections, episodes of syncope, falling, and Ms. Richardson's source statement." [ECF No. 20, PageID.697]. But Wetzel does not explain why those examinations were critical to her RFC, and this Court does not find support for the need for a more restrictive RFC after viewing the records she cites.

For one thing, Dr. Digby reviewed records showing that Wetzel had a positive straight-leg-raising test bilaterally, lumbar degenerative disc disease and lumbar spondylosis with radiculopathy and chronic back pain. [ECF No. 16-3, PageID.139]. Wetzel does not explain the critical difference between the reports that Dr. Digby reviewed and the ones from examinations after Dr. Digby's opinion. It is true that the record shows positive FABAR's[5] testing in September and October 2016, [ECF No. 16-7, PageID.516, 523], but this diagnosis, alone, says nothing about its disabling effects. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).[6]

_____

[5] "FABER" stands for flexion, abduction and external rotation. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5159634/ (last visited on December 6, 2019).

[6] Wetzel also references medical reports about her presyncopal symptoms, [*see* ECF No. 16-7, PageID.476], but the Commissioner notes that she does not claim to have a cardiac impairment. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our

Wetzel essentially asks the Court to reweigh the evidence considered by the ALJ, which is not permitted.  *Cutlip v. Sec. of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (noting that, if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion"). Although Wetzel cites evidence that could support a finding of disability, the ALJ's RFC finding is supported by substantial evidence and should be affirmed.

**D.**

Wetzel argues that the ALJ committed reversible error by finding her mental impairment non-severe, and by failing to give controlling weight to the opinion of her treating psychologist, Jason Wilkinson, Ph.D.  [ECF No. 20, PageID.699-703].  The Court finds that Wetzel has not shown reversible error.

*1.*

Ordinarily, the "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported

---

consideration to the particular points that Hollon appears to raise in her brief on appeal.").

by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  But the Commissioner argues that Dr. Wilkinson is not an acceptable medical source because he is a "limited license psychologist."  [ECF No. 21, PageID.727].

A treating physician is defined as "your own physician, psychologist, or other acceptable medical sources who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."  20 C.F.R. § 416.902.  A regulation that applied to applications for benefits filed before March 2017 defined "acceptable medical sources" as including "[l]icensed or certified psychologists."  20 C.F.R. § 404.1513(a)(2).[7]  The regulation made no distinction between "limited licensed" and "fully licensed" psychologists.  *Id.* And some courts in this circuit applying the regulation held that limited license psychologists are acceptable medical sources that can be treated as treating physicians.  *See, e.g., Molina v. Comm'r of Soc. Sec.*, 1:14-CV-648, 2015 WL 5097553, at *7 (W.D. Mich. Aug. 28, 2015) (holding "a psychologist need only be licensed or certified") (internal quotation marks

---

[7] In March 2017, after Wetzel filed her disability applications, the regulations operative language was changed.

and citation omitted).  Other courts disagreed.  *See, e.g., Darling v. Comm'r of Soc. Sec.*, No. 18-10479, 2019 WL 1503140, at *5 (E.D. Mich. Jan. 31, 2019), *adopted*, 2019 WL 1198701 (E.D. Mich. Mar. 14, 2019) (finding that a limited license psychologist was not an acceptable medical source).

The Court need not resolve this inter-circuit disagreement because, even if Dr. Wilkinson were an acceptable source, the ALJ cited good reasons for giving only some weight to his opinion.

*2.*

In November 2017, Dr. Wilkinson prepared an RFC assessment opining that Wetzel was seriously limited in or unable to perform several work-related activities.  [ECF No. 16-8, PageID.680-681].  When giving Dr. Wilkinson's opinion only some weight, the ALJ reasoned that Dr. Wilkinson's opinion was not well-supported and was inconsistent with the medical evidence, including Dr. Wilkinson's own treatment notes.  [ECF No. 16-2, PageID.84].

Wetzel contends the that, contrary to the ALJ's findings, Dr. Wilkinson's opinion was supported by his own treatment notes.  [ECF No. 20, PageID.699-703].  She states that Dr. Wilkinson's notes showed she suffered from anxiety, was prescribed Zoloft, Trazodone and Hydroxyzine, engaged in therapy, experienced night terrors, anger, outbursts and

flashbacks, and had moderate major depression.  [*Id.*, PageID.701-702
(citing ECF No. 16-8, PageID.589-590, 652-653, 658-659, 678)].  But
substantial evidence supports the ALJ's conclusion that Dr. Wilkinson's
treatment notes do not support his RFC assessment.

In November 2016, Dr. Wilkinson reported that Wetzel had anxiety,
depression and angry memories about being abused by her father, but her
examination was otherwise normal.  [ECF No. 16-8, PageID.669].  She
showed no impulsive or self-damaging behavior, had a normal appearance,
was fully oriented, had unimpaired memory and judgment, had normal
speech, and did not suffer from perceptual disturbances.  [*Id.*].  Wetzel's
affect was "sad and showed worry," but was also normal and not
inappropriate.  [*Id.*, PageID.669].  Dr. Wilkinson found Wetzel to have a
normal rate of thought and attention, and unimpaired thought content and
insight.  [*Id.*, PageID.669].  At another appointment later in November, Dr.
Wilkinson cited no new symptoms, and again found Wetzel to have no
violent, unusual or self-damaging behavior and to have unimpaired thought
content.  [*Id.*, PageID.668].

In January through March 2017, Dr. Wilkinson observed Wetzel to be
lethargic at one appointment, but her mood was later described as
euthymic and she began to experience an excellent response to treatment.

[*Id.*, PageID.662-667].  Dr. Wilkinson also found "remarkable" that Wetzel

had scored "2/10 for negative, and 10/10 for positive" for her thoughts in

February 2017. [*Id.*, PageID.665].  When dealing with the sudden death of

her brother in May and June 2017, Wetzel again showed anxiety and

depression, but no other symptoms were noted.  [*Id.*, PageID.657-658].

She reported at a later June 2017 appointment that "things are getting

better and easier," and that her medication was "helping significantly with

her anxiety."  [*Id.*, PageID.654].

In his August 2017 notes, Dr. Wilkinson stated Wetzel's "thought

content revealed no impairment," and she exhibited "good

insight/judgment."  [*See* ECF No. 16-8, PageID.653-654].  Wetzel informed

Dr. Wilkinson that she was "[b]usy doing house projects, which she is

independently completing.  No one else to help."  [*Id.*, PageID.653].

Though Dr. Wilkinson reported that Wetzel had anxiety, her mood was

euthymic and she had no other abnormal symptoms through October 31,

2017, the last appointment before Dr. Wilkinson prepared his November

2017 opinion.  [Id., PageID.652-653].

The Court does not question that Wetzel has suffered from mental

illnesses warranting therapy, but substantial evidence supports the ALJ's

finding that Dr. Wilkinson's treatment notes do not support his opinion that Wetzel was seriously limited in or unable to perform work-related activities.

*3.*

To support of her argument that the ALJ erred giving only some weight to Dr. Wilkinson's opinion, Wetzel also points to evidence submitted to the Appeals Council after the ALJ's decision.  [ECF No. 20, PageID.702 (citing ECF No. 16-2, PageID.67, 79)].  Generally, if the Appeals Council declines to review an ALJ's decision, courts cannot consider evidence not presented to the ALJ.  *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  But sentence six of Section 405(g) permits remand for an ALJ to consider new evidence when there is "*new* evidence which is material and that there is *good cause* for the failure to incorporate such evidence in to the record in a prior proceeding."  42 U.S.C. § 405(g) (emphasis added).

Evidence is "new" if "it was 'not in existence or available to the claimant at the time of the administrative proceeding.'"  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2002) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).  For the "good cause" requirement, the Sixth Circuit "has taken a harder line" and requires a claimant to "give a valid reason for his failure to obtain evidence prior to the hearing."  *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986).

Wetzel states that MMPI[8] testing verified that she suffered from moderate to severe post-traumatic stress disorder (PTSD).  [ECF No. 20, PageID.702].  But the testing she refers to was done on October 31, 2017, before the November 2017 hearing before the ALJ.  [ECF No. 16-2, PageID.65-67, 91].  The MMPI testing results were thus not "new," and Wetzel provides no explanation—much less good cause—for failing to provide them to the ALJ before her decision.  [ECF No. 20, PageID.702]. Remand for consideration of the MMPI results is therefore not permitted. *Foster,* 279 F.3d at 348; *Oliver,* 804 F.2d at 966.

*4.*

Finally, the Court finds that the ALJ did not commit reversible error at step two.  At that step, the ALJ considers the severity of a claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities."  §§ 404.1520(c), 416.920(c).  Basic work activities are "abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1522(b), 416.922(b) (examples listed). Courts construe "step two as a *de minimis* hurdle, intended to 'screen out

---

[8] MMPI stands for Minnesota Multiphasic Personality Inventory.  [ECF No. 16-2, PageID.65].

totally groundless claims.'"  *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x.

593, 597 (6th Cir. 2018) (quoting *Nejat v. Comm'r of Soc. Sec.*, 359 F.

App'x 574, 576 (6th Cir. 2009)).

The claimant bears the burden of showing the severity of her

medically determinable impairments.  *Bowen v. Yuckert*, 482 U.S. 137, 146

(1987).  If an ALJ finds any of a claimant's impairments severe, she must

"consider the limitations and restrictions imposed by *all* of an individual's

impairments, even those that are not severe."  *Kestel*, 756 F. App'x at 597

(emphasis in original) (internal citation and quotation marks omitted).  An

ALJ's error in considering an impairment non-severe is harmless if that

impairment is considered in the remaining steps within the decision.  *Id.*

Here, the ALJ found that Wetzel's mental impairments of anxiety and

depression, alone and combined, minimally limited her abilities, and thus

were not severe.  [ECF No. 16-2, PageID.79].  Challenging this conclusion,

Wetzel argues that the decision to give Dr. Wilkinson's opinion some

weight is inconsistent with a finding that she has no severe mental

impairments.  [ECF No. 20, PageID.699].  Wetzel also objects to the ALJ's

decision to give significant weight to a state agency consultant because the

consultant did not review Dr. Wilkinson's treatment notes or opinion.  [*Id.*;

ECF No. 16-2, PageID.84; ECF No. 16-3, PageID.153-154].  And Wetzel

accuses the ALJ of supplanting her opinion for that of Dr. Wilkinson. [ECF No. 20, PageID.699].

But as noted, Dr. Wilkinson's treatment notes did not evidence work-related impairments.  And the ALJ found "no compelling evidence that [Wetzel's] mental impairments cause more than mild limitations in her abilities to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; or adapt or manage herself."  [*See* ECF No. 16-2, PageID.79].  The ALJ also found that Wetzel's "reported daily activities show that she is able to learn and apply information, get along with others and maintain appropriate interpersonal relationships, initiate and complete tasks without any significant difficulty, and independently care for herself on a sustained basis."  [*Id.*].

In support of these conclusions, the ALJ noted that, in June 2017, a mental health provider reported that although Wetzel displayed symptoms of PTSD, she did not meet the diagnostic criteria.  [ECF No. 16-2, PageID.79; ECF No. 16-8, PageID.655].  The ALJ also considered Wetzel's close relationship with her boyfriend and his children.  [ECF No. 16-2, PageID.83].  Around January 2017, she reported she was busy with medical appointments for her boyfriend's daughter and was "'preoccupied with taking care of the kids.'"  [*Id.*, quoting ECF No. 16-8, PageID.665].

23

The ALJ also considered the fact that Wetzel lived alone after her brother passed—she could manage her home and independently make improvements.  [ECF No. 16-2, PageID.83; ECF No. 16-8, PageID.653]. And in November 2017, Wetzel attended an event at the Fox Theater. [ECF No. 16-2, PageID.83; ECF No.16-8, PageID.600].

Wetzel does not challenge the ALJ's analysis nor point to evidence that she was more than minimally limited in her abilities.  She relies on evidence that she was diagnosed with depression and anxiety, and was treated with medication and therapy, [ECF No. 20, PageID.701], but that evidence says nothing about her functional limitations.  *Higgs,* 880 F.2d at 863.  And the ALJ considered Wetzel's alleged mental impairments through the remaining steps of her analysis.  [*See* ECF No. 20, PageID.84].  So, even if the ALJ erred in finding that Wetzel's mental impairments were not severe, that error would be harmless.  *Kestel*, 756 F. App'x at 597.

### III.    CONCLUSION

The Court **RECOMMENDS** that Wetzel's motion for summary judgment [ECF No. 20] be **DENIED**; that the Commissioner's motion [ECF No. 21] be **GRANTED**; and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: December 11, 2019                United States Magistrate Judge


**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Recommendation, but must act within fourteen days of service of a

copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P.

72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

25

the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 11, 2019.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager